UNITED STATES of America, Appellee,

v.

Lorenzo GONZALEZ, a/k/a "Tito," Appellant.

UNITED STATES of America, Appellee,

v.

Modesto Anthony CABA, Appellant.

UNITED STATES of America, Appellee,

v.

Raphael VASQUEZ, Appellant.

Nos. 90–5188 to 90–5190.

United States Court of Appeals, Third Circuit

Argued Aug. 31, 1990.

Decided Nov. 16, 1990.

Rehearing Denied in Nos. 90–5188, 90–5190 Jan. 8, 1991.

---

See also 733 F.Supp. 29.

Richard Coughlin, John Hughes (argued), Office of Federal Public Defender, Camden, N.J., for appellant Lorenzo Gonzalez.

Peter V. Ryan (argued), West Orange, N.J., for appellant Modesto Anthony Caba.

Michael N. Pedicini (argued), West Orange, N.J., for appellant Raphael Vasquez.

Edna B. Axelrod, R. David Walk (argued), Office of U.S. Atty., Newark, N.J., for appellee.

Before HUTCHINSON, NYGAARD and ROSENN, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

In these consolidated appeals, Lorenzo Gonzalez (Gonzalez), Raphael Vasquez (Vasquez) and Modesto Caba (Caba) appeal from their judgments of conviction and the sentences imposed for their participation in a December 7, 1988, sale of over 700 grams of cocaine. A federal grand jury indicted each of them on three counts. Count one charged conspiracy to possess with the in-

tent to distribute in excess of 700 grams of cocaine, in violation of 21 U.S.C.A. § 841(a)(1) (West 1981); count two charged possession with intent to distribute in excess of 700 grams of cocaine, in violation of 21 U.S.C.A. § 841(a)(1) and 18 U.S.C.A. § 2 (West 1969) (defining aiders and abettors); and count three charged knowing and willful use and carrying of a firearm during a drug trafficking crime, in violation of 18 U.S.C.A. §§ 924(1) and (2) (West Supp. 1990).

All three defendants were convicted on the conspiracy and firearms charges. Only Gonzalez and Vasquez, however, were convicted of actually possessing the cocaine. The respective sentences of the three men were determined and enhanced in accordance with the United States Sentencing Guidelines (Guidelines). A fourth individual, Fioldaliza Gabriel (Gabriel), also was involved, but she agreed to cooperate with the government and pleaded guilty to a lesser offense. Since we find that the jury verdicts and the sentences imposed by the district court are reasonable and supported by the evidence, we will affirm.

## I.

In late 1988, the Drug Enforcement Agency (DEA), in conjunction with the Jersey City and Newark police departments, directed an operation in which a series of drug transactions were made between a Jersey City police detective assigned to the DEA (Detective) and Gonzalez and his associates. On November 16, 1988, the Detective purchased 49 grams of cocaine from Gonzalez for $1,350.00. The drug transaction took place in Gabriel's apartment. Vasquez had brought the cocaine to the apartment.

The Detective next called Gonzalez on December 5, 1988, to purchase $14,000.00 worth of cocaine. Evidence presented at trial showed that on December 6, 1988, the night before this purchase was to take place, Gonzalez and Vasquez went to Gabriel's apartment to store some cocaine there. Gabriel objected to the use of her home.

The drug transaction with the Detective took place in Gabriel's apartment on the next day, December 7, 1988. The defendants arrived at Gabriel's apartment first. While waiting for the Detective to arrive, Caba remarked that it was getting late for him to deliver the money. When the Detective got to the apartment, he went into the bedroom with Gonzalez to examine the cocaine. Vasquez, Caba and Gabriel were in another room while this was going on. When the Detective returned from the bedroom and began to leave, supposedly to get the money for the cocaine from his car, Caba momentarily blocked his way. After the Detective said something to the effect of "That's good coke, man," Caba allowed him to pass and exit the apartment. The Detective then went outside and signaled the other police officers and DEA agents waiting to assist him in the arrest.

Gonzalez, Vasquez and Caba were in the kitchen of the apartment when these officers and agents entered Gabriel's apartment. One of the officers (Officer) entered the kitchen, identified himself, and ordered the defendants to put their hands up in the air. Caba then reached for a gun in the waistband of his pants. According to the Officer the gun was "right in the front," "right in the middle" and "very obvious." The Officer struggled with Caba, but was able to take the gun away from him. About this time, another law enforcement officer entered the kitchen and helped the Officer to control the defendants. The gun taken from Caba was cocked and fully loaded. The cocaine was found in a cabinet beneath the sink.

After their arrest, a federal grand jury indicted the defendants. Before trial, the government offered a package plea agreement to the three men. If Vasquez and Gonzalez would plead guilty to possession (count two), and Caba to the firearms charge (count three), the other counts against them would be dropped. Unanimous acceptance of the proposal was required. Although all three initially agreed to the plea package, Caba later refused to admit certain facts related to his guilty plea. The proposal was therefore withdrawn by the government, and the plea

bargains never presented to the district court.

Gonzalez, Vasquez and Caba were tried together before a jury in the United States District Court for the District of New Jersey beginning on October 17, 1989. During the trial, Caba moved to sever his case from that of the other two defendants, and also submitted a motion to sequester the government's case agent. Caba wished to prevent the case agent, a scheduled witness, from coordinating his testimony with another federal agent, who was also scheduled to testify. The district court denied Caba's severance motion because he did not make the showing of prejudice necessary to grant a separate trial. The district court likewise denied Caba's sequestration request because it determined that it lacked authority to bar the government's case agent from the courtroom.

After hearing all the evidence, the jury convicted Gonzalez and Vasquez on all three counts. Caba was found guilty on count one, the drug conspiracy charge, and count three, the firearms charge, but was acquitted on count two, the substantive drug possession charge.

The district court then sentenced the three, pursuant to the Guidelines. Gonzalez and Vasquez received concurrent sentences of 70 months on counts one and two. Caba received a 70 month sentence on his conviction under count one. All three defendants also received mandatory sentences of 60 months on count three, to be served consecutively to the other sentences. Gonzalez's sentence was enhanced because the district court determined that he was the leader and supervisor of the conspiracy. Caba's offense level was raised because the court determined that it was appropriate to consider the large amount of cocaine seized during the arrest in determining his sentence.

After sentencing, all three defendants appealed to this Court. Because we find no merit in the appellants' contentions, we will affirm the district court's judgments.

II.

The district court had jurisdiction over these cases pursuant to 18 U.S.C.A. § 3231 (West 1985). We have jurisdiction over these appeals pursuant to 28 U.S.C.A. § 1291 (West Supp.1990) and 18 U.S.C.A. § 3742 (West 1985 & Supp.1990). Our standard of appellate review of the district court decisions and findings varies by issue.

When appellants challenge the sufficiency of the evidence presented at trial, it is well established that, in a review following conviction, all issues of credibility within the province of the jury must be viewed in the light most favorable to the government. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *Government of Virgin Islands v. Williams*, 739 F.2d 936, 940 (3d Cir.1984). This court must affirm the convictions if a rational trier of fact could have found the defendants guilty beyond a reasonable doubt and the convictions are supported by substantial evidence. *See Williams*, 739 F.2d at 940. To sustain the jury's verdict, the evidence "does not need to be inconsistent with every conclusion save that of guilt." *Id.* (quoting *United States v. Allard*, 240 F.2d 840, 841 (3d Cir.), *cert. denied*, 353 U.S. 939, 77 S.Ct. 814, 1 L.Ed.2d 761 (1957)). "[A] claim of insufficiency of the evidence places a very heavy burden on an appellant." *United States v. Losada*, 674 F.2d 167, 173 (2d Cir.), *cert. denied*, 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982).

The legal issues, including those related to the package plea agreements originally proposed by the government, are subject to plenary review. *See United States v. Preston*, 910 F.2d 81, 84 (3d Cir.1990).

The district court's denial of Caba's motions for severance and for sequestration of a witness are reviewable for abuse of discretion. This Court has held that:

> In the absence of an affirmative showing of an abuse of discretion, this Court will not interfere with the [severance] determinations made by the District Court. The burden of demonstrating such abuse is a heavy one. Indeed the Supreme

Court has indicated that it will not intervene in such matters unless the District Court's ruling is clearly erroneous. *United States v. Somers*, 496 F.2d 723, 730 (3d Cir.), *cert. denied*, 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974) (citations omitted); *see also Government of Virgin Islands v. Edinborough*, 625 F.2d 472, 475 (3d Cir.1980) (holding that the standard of review of a denial of a sequestration motion is abuse of discretion).

When reviewing calculations performed under the Guidelines:

> The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

*United States v. McDowell*, 888 F.2d 285, 291–92 (3d Cir.1989) (quoting the Guidelines enabling statute, 18 U.S.C.A. § 3742(e) (West Supp.1989)).

### III.

We first consider the Government's withdrawal of the proposed package plea agreements when Caba refused to plead guilty to count three. Vasquez, in his argument, focuses on the contractual nature of plea bargaining, *see Santobello v. New York*, 404 U.S. 257, 261–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971), claiming that the district court erred by not ordering specific performance of the tentative plea agreement that the government had reached with him. Gonzalez makes a similar argument, although he contends that the government violated due process by conditioning the plea agreements on acceptance by all three defendants. Based on our holding in *Government of the Virgin Islands v. Scotland*, 614 F.2d 360 (3d Cir. 1980), we refuse enforcement of the withdrawn plea agreement. Here, agreement was never reached, the proposal was withdrawn and the agreement was never presented to the district court. It is axiomatic that a plea agreement is neither binding nor enforceable until it is accepted in open court.

*Scotland* held that a defendant's agreement to plead guilty under the terms of a prosecutor's plea offer did not give him a right to specific performance under those terms when the prosecutor backed out of the agreement and tried to impose additional terms. *See id.* at 362–65. In *Scotland*, we specifically rejected the rule formulated by the United States Court of Appeals for the Fourth Circuit in *Cooper v. United States*, 594 F.2d 12 (4th Cir.1979). *Cooper* permitted a court to order specific performance of an unconsummated plea, even in the absence of detrimental reliance. In refusing to follow the holding in that case, we pointed out that the fundamental right to trial by jury "would be belittled if we held it to be an insufficient 'remedy' or result for a defendant who has not been induced to rely on the plea to his detriment." *Scotland*, 614 F.2d at 365.

Vasquez argues that basic fairness should compel the government to be held to the terms of the agreement it had reached with him, since he was ready, willing, and able to plead guilty to count one as required by the agreement. The proposal, however, was subject to a condition precedent—that all three must plead guilty in order for there to be an agreement. In *United States v. Moscahlaidis*, 868 F.2d 1357, 1361 (3d Cir.1989), we noted that a plea agreement "is contractual in nature and is to be analyzed under contract-law standards." However, the district court did not err by refusing to order specific performance of the tentative agreements reached. This action was correct because the court was never actually presented with the conditional agreements reached by Gonzalez or Vasquez. The conditional nature of the proposed plea agreements is not disputed by any of the parties. Therefore, under the approach suggested in *Moscahlaidis*, the agreements should not be enforced when one of the conditions to the agreement (unanimous agreement) is not met. *See Duff v. Trenton Beverage Co.*, 4 N.J. 595, 73 A.2d 578 (1950) (explaining the basic contract law principle of condition precedent).

Gonzalez maintains that the prosecutor's requirement of unanimous acceptance was an unfair inclusion in the plea package, violating his constitutional due process guarantees. Even though he was willing to accept the proposal[1] and plead guilty to count two in exchange for having counts one and three dropped, the government withdrew the proposal after Caba refused to plead guilty before the district court. Following the holding in *Scotland,* however, it is clear that due process was not violated when the government proposed a package plea agreement with the three defendants and then withdrew the proposal after Caba refused to plead guilty before the district court. Neither Gonzalez nor Vasquez (nor Caba, for that matter) detrimentally relied on the terms of the agreements he had accepted. As a result, their right to trial by jury was an adequate remedy for any impropriety that may have arisen from the government's action. We have already held that:

> The prosecutor is under no duty to plea bargain—if no offer is made, the defendant is entitled to a trial. There is no rational basis for holding, in essence, that a trial is sufficient for the defendant who has not been offered a plea and insufficient for the one who has.

*Scotland,* 614 F.2d at 365.[2]

### IV.

We now turn to the defendants' various objections to the sufficiency of the evidence presented below. There are two main questions: (1) did the government produce sufficient evidence to support Caba's conspiracy conviction and (2) did the government produce sufficient evidence to sustain the convictions of Gonzalez and Vasquez for the knowing and willful use and carrying of a firearm during a drug trafficking crime. As we will explain, there was sufficient evidence produced to show that Caba was a participant in the conspiracy, and therefore, his use of a gun during a drug-trafficking crime is attributable to all of his co-conspirators for the purposes of conviction and sentencing.

This Court recognizes that "the essence of criminal conspiracy ... is an agreement, either explicit or implicit, to commit an unlawful act, combined with intent to commit an unlawful act, combined with intent to commit the underlying offense." *United States v. Kapp,* 781 F.2d 1008, 1010 (3d Cir.), *cert. denied,* 475 U.S. 1024, 106 S.Ct. 1220, 89 L.Ed.2d 330 (1986). Although the government must show beyond a reasonable doubt that a given defendant is part of the conspiracy, "this can be done entirely through circumstantial evidence." *Id.*

In the instant case, Caba's knowing participation in the conspiracy to distribute cocaine can be inferred from all the facts and circumstances of the case. The government produced evidence showing that Caba was present the night before the transaction when Gonzalez and Vasquez tried to store the cocaine at Gabriel's apartment, and that Vasquez "invited" him to be present at the apartment again the next day while the transaction was taking place.

> [W]hen a defendant pleads guilty in reliance on an agreement with the prosecutor, that promise must be fulfilled. *Santobello* arguably could be extended to cover the situation where the defendant has not yet entered the plea, but has relied on the bargain in such a way that a fair trial would no longer be possible.
>
> If the defendants *had* detrimentally relied, the basic estoppel principles recognized in *Santobello,* 404 U.S. at 261–63, 92 S.Ct. at 498–99, might apply to protect their rights to due process. *See Scotland* 614 F.2d at 365. Since none of the defendants claimed such reliance, availability of a trial by jury guaranteed that they were not left without adequate remedy upon withdrawal of the package plea bargain.

---

1. The more difficult questions related to package plea agreements arise when one of the defendants involved in the agreement is "coerced" into pleading guilty and giving up his right to a jury trial so that his co-defendants will be able to get attractive sentences under the agreement. We reserve decision on this issue because it is not before us.

2. The Supreme Court of the United States in *Mabry v. Johnson,* 467 U.S. 504, 510–11, 104 S.Ct. 2543, 2548, 81 L.Ed.2d 437 (1984), adopted an approach similar to *Scotland's* in analyzing due process issues related to a prosecutor's withdrawal from an accepted plea agreement.

 In *Scotland,* 614 F.2d at 365, this Court noted that reliance is important to the *Santobello* analysis. We said:

Further evidence was presented that, while Gonzalez and the Detective were meeting in the back bedroom of the apartment, Caba said it was getting late for him to deliver the money. Also, Caba did not act surprised when the Detective remarked "That's good coke, man" and shook his hand as the Detective went around him and headed for the door of Gabriel's apartment. Caba was later found standing in the kitchen with the other two defendants and the cocaine when the detectives and agents moved in to arrest them. Taken together, this is enough evidence for a reasonable jury to have determined, beyond a reasonable doubt, that Caba was a member of the conspiracy.

■ Gonzalez and Vasquez admit that they were part of a conspiracy to possess and distribute cocaine. On appeal they assert that their conspiracy charges should not have been extended to include the carrying of or use of a firearm during a drug trafficking offense. The two men contend that only Caba was carrying a firearm and none of the others in the conspiracy either knew about or condoned this activity. Gonzalez and Vasquez specifically rely on the trial statements of Gabriel, who testified that the group had decided not to use a firearm during the cocaine transaction.

Caba's gun was in the middle of the front of his waistband. This placement made it easy for the police detectives and DEA agents who arrested the defendants, as well as Gonzalez and Vasquez, to see the gun. A rational jury could have chosen to disbelieve Gabriel's testimony and therefore could have determined, beyond a reasonable doubt, that Caba was the "muscle" hired for this drug transaction and therefore that he would be carrying a gun. *Cf. Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959) (noting that "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.").

As we have determined that Caba was a member of the conspiracy, we hold that his co-conspirators are liable for his substantive offenses, in accord with the rule of co-conspirator liability recognized in *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). In *Pinkerton*, the Supreme Court held that a conspirator may be held responsible for the substantive crimes committed by a co-conspirator in furtherance of the conspiracy, even if the conspirator neither participates in the crimes nor has any knowledge of them. *Id.* at 646–47, 66 S.Ct. at 1183–84. Under *Pinkerton*, however, a conspirator is *not* liable for the deeds of a co-conspirator if one of the following three exceptions applies: (1) "the substantive offense committed by one of the conspirators was not in fact done in furtherance of the conspiracy," *id.* at 647, 66 S.Ct. 1184, (2) the substantive offense committed by one of the conspirators "did not fall within the scope of the unlawful project", *id.* at 647–48, 66 S.CT. at 1184, or (3) the substantive offense committed by one of the conspirators "could not be reasonably foreseen as a necessary or natural consequence of the lawful agreement." *Id.* at 648, 66 S.Ct. at 1184. As long as Caba's action was within the purview of the conspiracy, his co-conspirators are liable for his gun as if they had carried the firearm themselves.[3] As a result, sufficient evidence showing that Caba would be carrying a gun was produced to sustain the verdict, or at least to show that his actions were "reasonably foreseeable" under the *Pinkerton* rule.[4]

---

**3.** In *United States v. Burke*, 888 F.2d 862 (D.C. Cir.1989), the District of Columbia Circuit held that enhancement of a sentence for possession of a firearm under 18 U.S.C.A. § 924(c), *Guidelines* § 2D1.1(b), as modified by § 1B1.3, in effect at the time of appellants' (and defendant Burke's) arrest, required a showing of scienter. There, the government at sentencing had to show that the gun was possessed "intentionally, recklessly, or by criminal negligence." *Guide-* *lines* § 1B1.3. The weapons charge had been dismissed. There was no trial evidence showing intention. Accordingly, *Burke* is distinguishable.

Here we have a trial record that shows scienter available for use in sentencing. Moreover, the doctrine of transferred intent recognized in *Pinkerton* applies to the weapons charges against Gonzalez and Vasquez.

The government urges us to follow the lead of the Seventh Circuit in *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989), and hold that the use of a weapon during a drug deal is both foreseeable and within the "scope of the unlawful project." We decline the government's invitation. Recognition of a presumption that the carrying of a firearm in a drug deal is foreseeable in the absence of other evidence of foreseeability is unnecessary to the adjudication of this case.[5] Here, without the benefit of any presumption, the government presented enough evidence for a reasonable jury to determine that Caba's use of his weapon was both foreseeable to co-conspirators Gonzalez and Vasquez and within the scope of the conspiracy. Considering the placement of Caba's gun, the fact that he was in the kitchen with Gonzalez and Vasquez at the time of the arrest and his act of blocking the Detective's way out of the apartment,

it was reasonable for the jury to conclude that Caba was the "muscle" of the group and he was there to protect the money and the cocaine. In addition, Caba was present the night before the transaction when Gonzalez and Vasquez tried to store the cocaine at Gabriel's apartment, and Vasquez "invited" him to be present at the apartment again the next day while the transaction was taking place in the back bedroom. Thus, we leave to another day the determination of whether knowing and willful use and carrying of a firearm during a drug trafficking crime, in violation of 18 U.S.C.A. §§ 924(1) and (2), by one conspirator by itself allows a jury to find the co-conspirators guilty of a conspiracy to use a firearm in carrying out their drug deals.[6]

## V.

Caba also attacks the district court's denial of his motions for severance and sequestration. On the severance issue, we hold the district court did not abuse its discretion when it concluded that Caba had

---

4. Gonzalez claims that he was not shown to have the requisite intent required for commission of count three. He relies upon *United States v. Coleman*, 811 F.2d 804, 808 (3d Cir. 1987). In *Coleman*, the government failed to show the specific intent necessary to sustain conviction on a conspiracy charge. No mention is made of the intent necessary for an underlying substantive charge.

The *ex post facto* implications of applying a version of the *Guidelines* in effect before sentencing but after arrest, and the corresponding questions concerning the scienter requirements removed from the November 1989 *Guidelines* amendments are not decided here. *Cf. U.S. v. Suarez*, 911 F.2d 1016 (5th Cir.1990) (determining that the scienter requirements recognized under *Burke* would create *ex post facto* implications if a defendant was sentenced under the new *Guidelines* if his arrest took place before the adoption).

5. We have used the term "presumption" because that is the word which seems to most accurately describe the implication of event "B" from event "A" without a further showing that event "B" necessarily follows upon event "A", *i.e.*, as the government suggests, that all drug deals involve guns because some do. We acknowledge that if "many" do, the presumption of foreseeability could be considered a rational presumption. We also recognize that the very term "foreseeability" implies a prediction about uncertain events in terms of probability. In that sense, we

may already be dealing with a presumption. We should, however, be wary of importing into criminal law the expansive notions the term foreseeability has acquired from its talismanic use in defining duty for purposes of liability in tort. Whether the frequent use of guns in drug deals permits an "inference" from which a jury could find beyond a reasonable doubt that drugs imply guns is a different matter, which we do not decide today.

6. The government infers that we have already recognized such a presumption, and cites *United States v. Gorecki*, 813 F.2d 40, 43 (3d Cir.1987). The government claims that *Gorecki* stands for the proposition that weapons are the tools of the narcotics trade. *Gorecki*, however, deals with the joinder of offenses under Federal Rule of Criminal Procedure 8(a). The case held that a firearms charge and a drug possession charge can be joined if they are sufficiently related. Even if *Gorecki* recognized a presumption in favor of joinder, which we believe it did not, *see id.* at 42, the case would still not be authority for adopting the presumption the government suggests.

In light of our determination that Vasquez and Gonzalez are liable for the weapons charge as co-conspirators, we need not address the issue of whether evidence sufficient to support a charge of aiding and abetting also supports a charge of conspiracy.

not shown sufficient prejudice to justify a separate trial. Likewise, the district court did not abuse its discretion when it denied Caba's motion for sequestration of the government's case agent. The Federal Rules of Evidence permit the employee of a party that is not a natural person to act as its designated representative at trial. *See* Fed.R.Evid. 615(2). Here, the case agent functioned as the government's designated representative.

■ Denial of a motion for severance is reviewed for abuse of discretion. *See Somers,* 496 F.2d at 730. Since Caba did not demonstrate sufficient prejudice to warrant a separate trial, the denial of his motion for severance was not an abuse of discretion.

In *United States v. Boscia,* 573 F.2d 827 (3d Cir.), *cert. denied,* 436 U.S. 911, 98 S.Ct. 2248, 56 L.Ed.2d 411 (1978), we enumerated four factors that a district court should consider when determining whether a defendant should be granted severance: (1) What is the likelihood that co-defendants will testify? (2) What is the degree to which such testimony would be exculpatory? (3) What is the degree to which the testifying co-defendants could be impeached? (4) What is the effect on judicial economy? *See id.* at 832.

Consideration of the *Boscia* factors supports the district court's decision not to sever Caba's trial from the trial of Gonzalez and Vasquez. First, although Caba asserted that one or both of the co-defendants would testify on his behalf if the trials were separate, this assertion was at least partially contradicted by counsel for Vasquez at a pre-trial hearing, and it is not clear from the record whether either of the co-defendants actually would have testified on behalf of Caba in a separate trial. Under *Boscia,* "[b]are assertions that co-defendants will testify are insufficient." *Id.* at 832. The record does not plainly show anything more than Caba's request for declaration of Gonzalez's and Vasquez's intent to testify. Therefore, he did not sustain his burden of showing prejudice, even at the threshold.

It is likewise not clear that the other defendants' testimony would have been exculpatory when the possibilities of impeachment are considered. If Gonzalez and Vasquez agreed to testify, we recognize that it would be in their best interests to exonerate Caba, but the prosecution could undermine the exculpatory effect that testimony might have by attacking their credibility on that basis under Federal Rule of Evidence 607. *Cf. Napue,* 360 U.S. at 269, 79 S.Ct. at 1177. Considering this possibility of impeachment, the district court had discretion to reject Caba's argument that he was necessarily prejudiced in this respect.

Judicial economy favors denial of a motion to sever. Other considerations aside, separate trials are simply more expensive and time-consuming. *See United States v. Provenzano,* 688 F.2d 194, 199 (3d Cir.), *cert. denied* 459 U.S. 1071, 103 S.Ct. 492, 74 L.Ed.2d 634 (1982); *Boscia,* 573 F.2d at 833 (noting that "considerations of judicial economy weigh heavily against separate trials."). Therefore, this factor also weighs in favor of denial of severance.

Our evaluation of the four *Boscia* factors leads to the conclusion that denial of Caba's motion to sever was appropriate. The district court acted within its discretion in denying Caba's motion to sever.

■ We also review denial of Caba's motion for sequestration of a witness for abuse of discretion. Here also, we hold that the district court did not abuse its discretion when it denied Caba's motion to sequester the government's case agent, even though the case agent later testified against Caba and the other defendants. Upon a party's request, Federal Rule of Evidence 615 requires a district court to order sequestration of a witness. There are only three exceptions to this rule. The district court is not authorized to sequester a witness who is:

(1) a party who is a natural person, or

(2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or

(3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

*See* Fed.R.Evid. 615.

The district court applied the second exception in disallowing Caba's motion. The witness whom Caba wished to sequester was the United States' designated representative. Many circuits recognize a "case agent" exception to the typical rule of sequestration, basing the exception on Rule 615. *See United States v. Machor*, 879 F.2d 945, 953 (1st Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990); *see also United States v. Robles–Pantoja*, 887 F.2d 1250, 1256–57 (5th Cir.1989); *United States v. Adamo*, 882 F.2d 1218, 1235 (7th Cir.1989); *United States v. Parodi*, 703 F.2d 768, 773 (4th Cir.1983); *United States v. Butera*, 677 F.2d 1376, 1381 (11th Cir.1982), *cert. denied,* 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983); *United States v. Perry*, 643 F.2d 38, 53 (2d Cir.), *cert. denied,* 454 U.S. 835, 102 S.Ct. 138, 70 L.Ed.2d 115 (1981). These cases hold that the government case agent responsible for a particular investigation should be permitted to remain in the courtroom, even though the agent will often testify later on behalf of the government. Such an exception is envisioned by Rule 615(2), and it is further supported by legislative history.[7] The district court followed one of the exceptions listed in Rule 615(2) when it denied Caba's motion to sequester, and did not abuse its discretion.[8]

## VI.

The last issues raised on this appeal concern the propriety of the sentences the district court imposed. We review the trial judge's sentencing calculations for plain error. Here we find none.

 Caba claims that the 747 grams of cocaine seized at the time of his arrest should not have been used in the calculations determining his total offense level. Since he was convicted of two drug related offenses, the amount of drugs seized is relevant to any calculation of the sentencing for those offenses. *See Guidelines* §§ 2D1.1(a)(3) & 2D1.4(a).

 Gonzalez argues that his offense level should not have been subject to a two-point increase based on the finding that he was the leader or supervisor of the conspiracy. He draws our attention to seven factors listed in a commentary to *Guidelines* § 3B1.1, which is entitled "Aggravating Role," which were intended for use by a district court in "distinguishing a leadership and organization role from one of mere management or supervision."[9]

---

7. The Senate Committee, reviewing the proposed Rule 615 realized that "[m]any district courts permit government counsel to have an investigative agent at counsel table throughout the trial although the agent is or may be a witness." S.Rep. No. 1277, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin. News 7051, 7072. The Senate Report noted that although the presence of the case agent might be extremely important to the government's counsel, it would often be difficult to demonstrate that the agent's presence was essential. *Id.* at 7072–73. The report resolves this difficulty by concluding:

> This problem is solved if it is clear that investigative agents are within the group specified under the second exception made in the rule, for "an officer or employee of a party which is not a natural person designated as its representative by its attorney." It is our understanding that this was the intention of the House committee. It is certainly this committee's construction of the rule.

*Id.* at 7073.

8. We do not decide the issues of whether a case agent may ever be excluded from trial or what level of prejudice is necessary to carry such a motion for sequestration since it is not before us today. Caba's argument that the agents could coordinate their testimony does not pose a likelihood of prejudice since they had ample time before trial to do that, were they so inclined.

9. These factors are:

> (1) "the exercise of decision-making authority";
> (2) "the nature of participation in the commission of the offense";
> (3) "the recruitment of accomplices";
> (4) "the claimed right to a larger share of the fruits of the crime";
> (5) "the degree of participation in planning or organizing the offense";
> (6) "the nature and scope of the illegal activity"; and
> (7) "the degree of control and authority exercised over others."

*Guidelines* § 3B1.1 application note 3. These factors are discussed in *United States v. Ortiz*, 878 F.2d 125 (3d Cir.1989), which governs resolution of this issue.

In *Ortiz* we recognized that "[i]f a particular determination involved closely resembles a finding of fact, the court of appeals would apply a clearly erroneous test." *Id.* at 126. There, the court found determination of the defendant's position in a criminal association to be within the fact-finding purview of the trial court and applied the clearly erroneous standard. *Id.* at 127. Following *Ortiz*, we affirm the district court's fact-finding because it is not clearly erroneous.

The record has ample evidence to support the district court. In each of the various transactions leading up to the night of his arrest, Gonzalez handled the original negotiations with the Detective and determined both the location and the price of the drugs. He reached agreements with the Detective, used Gabriel as an intermediary and had his "worker," Vasquez, bring the cocaine to him so he could complete the sale. Since Gonzalez set up, supervised and completed more than one deal with the Detective, including the December 7, 1988, transaction, the district court's enhancement of Gonzalez's sentence because of his supervisory position within the drug conspiracy was not clearly erroneous.

Caba's sentencing also presents no plain error. Caba assumes that his acquittal on count two, the substantive drug possession charge, frees him from all association with the 747 grams of cocaine seized the night of his arrest. He is wrong. A defendant who is a member of a conspiracy that involves a controlled substance should have the offense level determined "as if the object of the conspiracy ... had been completed." *Guidelines* § 2D1.4(a). The plain language of the applicable guideline destroys Caba's argument that the district court erred in considering the 747 grams of cocaine when sentencing him under the *Guidelines.*[10]

## VII.

For the foregoing reasons, we will affirm the convictions and the sentences the district court imposed.

*Guidelines* § 3B1.1, application note 3. The factors are subject to a pair of caveats: (1) there can be more than one individual who qualifies as a leader or organizer and (2) merely suggesting an offense does not make an individual the leader. *Id.*

10. The commentary language in *Guidelines* § 2D1.4(a) application note 1 explains the guidelines' use in the context of a defendant who has not been tried for all the controlled substance transactions related to a given drug conspiracy conviction. Note 1 also allows a court to recognize that a defendant was incapable of producing a stated amount of controlled substance ("puffing"), and reduce the sentence accordingly. Note 1 does not impact on Caba's situation. Note 2, however, directly supports the district court sentence because it allows the judge to consider outside factors related to the defendant's conduct when passing sentence. Although the present situation is not mentioned, the list given in note 2 is not comprehensive, and the contents of the list are intended as examples. *See Guidelines* § 2D1.4(a), application note 2.