

Villanova University School of Law Digital Repository

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-23-2008

# USA v. Farrish

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1904

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Farrish" (2008). *2008 Decisions.* Paper 334.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/334

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1904
_____

UNITED STATES OF AMERICA

v.

MARCEL RAYNARD FARRISH,
a/k/a Marcel Raynard Farris,
a/k/a Michael Murphy


Marcel Raynard Farrish,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 05-cr-00218)
District Judge:  Honorable Donetta W. Ambrose
_____

Submitted Under Third Circuit LAR 34.1(a)
September 29, 2008

Before:  FISHER, CHAGARES and HARDIMAN, *Circuit Judges*.

(Filed: October 23, 2008)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Marcel Farrish appeals his judgment of conviction and sentence on all three counts in his indictment. At the conclusion of his trial, the jury convicted Farrish of (1) possessing with intent to distribute five or more grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii); (2) using or carrying a firearm during and in relation to any drug trafficking crime or, in furtherance of any such crime, possessing a firearm in violation of 18 U.S.C. § 924(c)(1)(A); and (3) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The District Court sentenced Farrish to a total of 138 months' imprisonment.

Farrish attacks his conviction and sentence on four grounds: (1) the Government presented insufficient evidence to support his conviction under 18 U.S.C. § 924(c); (2) the District Court improperly admitted expert testimony in violation of Federal Rule of Evidence 704(b); (3) the District Court inappropriately denied his motion to suppress evidence; and (4) the District Court erred in believing it could not depart from the Federal Sentencing Guidelines ("Guidelines") to grant a downward variance based solely on the sentencing disparity between crack and powder cocaine. For the reasons that follow, we will affirm Farrish's conviction, but will vacate his sentence and remand for resentencing.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

On the night of March 27, 2004, three City of Pittsburgh police officers were patrolling the Homewood area of Pittsburgh in an unmarked police vehicle. At approximately 10:00 p.m., they came across a car idling at the corner of Mulford and Cora Streets, in front of a "no parking" street sign. Detective Edward Fallert exited the police vehicle and approached the idling car, intending to ask its driver to move along. Upon approaching the car, Detective Fallert noticed the man sitting alone in the driver's seat, later identified as Farrish, grab something from his lap with his right hand, place it in his mouth, and start chewing rapidly. Detective Fallert believed Farrish was in possession of and attempting to destroy contraband, so he asked Farrish what he was chewing. Farrish stated that it was a "bag of weed." Detective Fallert asked Farrish to open his mouth, Farrish complied, and Detective Fallert noticed green, leafy matter in Farrish's mouth, which he believed based on his experience as a police officer to be marijuana. Detective Fallert asked Farrish to exit the vehicle and arrested him for possession of a controlled substance and tampering with evidence. Farrish gave his name, but stated that he lacked identification because his driver's license was suspended. He told the officers that the car in his possession belonged to his girlfriend.

Due to Farrish's arrest and his suspended license, no one was present to remove the vehicle from the "no parking" zone. Therefore, the police arranged for a tow service to impound the car. Pursuant to the towing policy of the City of Pittsburgh Police Department, the police performed a warrantless inventory search of the vehicle and its contents. In the trunk, they discovered eighty-eight knotted plastic baggies containing a substance later determined to be crack cocaine, a fully loaded 9-millimeter semiautomatic gun, and a baggie with thirty loose 9-millimeter rounds, among other noncontraband items. The crack cocaine weighed 15.32 grams and had an approximate street value of $1,700. The firearm was registered in Farrish's name and records indicated that he purchased it on June 5, 1997.

Following Farrish's arrest, the grand jury indicted him on three charges: (1) possessing with intent to distribute five or more grams of cocaine base; (2) using, carrying, or possessing a firearm during, in relation to, or in furtherance of a drug trafficking crime; and (3) being a felon in possession a firearm. Farrish pled not guilty to each of the charges and chose to be tried before a jury. Prior to trial, Farrish unsuccessfully moved to suppress all evidence discovered as a result of his arrest, particularly the contraband found during the inventory search of the car. Farrish also moved to prevent the Government's police officer expert witness from testifying, which the District Court partially granted, excluding any expert testimony regarding Farrish's mental state with respect to his reason for possessing the cocaine. At the conclusion of

4

trial, the jury convicted Farrish on all three counts. Based on his charges, Farrish faced statutory mandatory minimum sentences of five years each on counts one and two, and count two's sentence had to run consecutively with any additional sentence. Farrish's Guidelines range for counts one and three totaled 78 to 97 months.

At Farrish's February 22, 2007 sentencing hearing, his counsel asked the District Court to consider granting a downward variance due to the sentencing disparity between crack and powder cocaine, arguing for a total ten-year sentence calculated by adding the two five-year statutory minimum sentences together. The District Court responded that, despite its disagreement with the crack/powder cocaine sentencing disparity, the request to consider it presented "an invitation to disregard the very settled law that I am obliged to follow." The District Court ultimately sentenced Farrish to a total term of imprisonment of 138 months, summing the 78-month Guidelines minimum for counts one and three and the five-year statutory minimum sentence on count two to reach that amount. Farrish timely appealed.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we exercise jurisdiction over Farrish's appeal pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. The following standards of review govern this appeal. When reviewing a jury verdict for sufficiency of the evidence, we will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, and we view

5

the evidence in the light most favorable to the Government. *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). Consequently, a "claim of insufficiency of the evidence places a very heavy burden on an appellant." *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990) (internal quotation marks omitted).

We review the District Court's decision on admitting expert testimony for abuse of discretion. *United States v. Watson*, 260 F.3d 301, 306 (3d Cir. 2001). "To show an abuse of discretion, appellants must show the district court's action was arbitrary, fanciful or clearly unreasonable [and we] will not disturb a trial court's exercise of discretion unless no reasonable person would adopt the district court's view." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002) (internal citations and quotation marks omitted). However, our review of the District Court's interpretation of the Federal Rules of Evidence is plenary. *United States v. Brown*, 254 F.3d 454, 458 (3d Cir. 2001).

We review the denial of Farrish's motion to suppress "for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the district court's properly found facts." *United States v. Coles*, 437 F.3d 361, 365 (3d Cir. 2006).

We review the sentence imposed by the District Court for unreasonableness, and Farrish bears the burden of demonstrating the unreasonableness of his sentence on appeal. *United States v. Cooper*, 437 F.3d 324, 332 (3d Cir. 2006). In our review, we must first ensure the District Court committed no significant procedural error in reaching its

6

conclusion, which we review under an abuse-of-discretion standard. *United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008).

## III.

### A.

Farrish claims the Government presented insufficient evidence to support his conviction on count two under 18 U.S.C. § 924(c) because it proved only the gun's presence next to the cocaine, and not that Farrish used, carried, or possessed the gun "in relation to" or "in furtherance of" a drug trafficking crime. The "mere presence" of a firearm is not enough to support a conviction under § 924(c); instead, some evidence must indicate that the possession of the firearm actually furthered the drug trafficking offense. *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004). In determining whether the firearm furthered the drug trafficking offense, this Court considers the following nonexclusive factors: the type of drug activity being conducted, the firearm's accessibility, the type of firearm, whether the firearm was stolen, the legitimacy of the possession, whether the firearm is loaded, the firearm's proximity to drugs or drug profits, and the time and circumstances under which the gun was found. *Id.*

Farrish has not met his heavy burden to show that the evidence presented at trial was insufficient to sustain his conviction. The Government presented evidence indicating that the cocaine in Farrish's trunk was packaged to be sold, and not intended for Farrish's personal use. The proximity of the gun to the drugs, the fact that drug dealers commonly

7

carry guns, and the amount of ammunition in the gun all helped demonstrate that Farrish intended to use the gun while trafficking cocaine. Construing all evidence in the light most favorable to the Government and reviewing it under the factors established in *Sparrow*, we conclude that a rational juror could have found that Farrish possessed the gun in furtherance of a drug trafficking crime.

B.

Farrish next argues he should receive a new trial because the District Court improperly admitted expert testimony in violation of Federal Rule of Evidence 704(b). Rule 704(b) limits the content of expert testimony, and bars expert testimony on "ultimate issues," including whether or not a defendant has "the mental state or condition constituting an element of the crime charged or of a defense thereto." Farrish argues the District Court should not have permitted the Government's expert to testify as to whether the quantity of drugs in the trunk indicated intent to sell and whether the proximity of the gun to the drugs indicated intent to use the gun in conjunction with drug trafficking. Farrish asserts that, in making such statements, the expert violated Rule 704(b) by testifying to the ultimate issue of whether Farrish had the requisite mental state for a finding of guilt under 18 U.S.C. § 924(c).

We have held that "[e]xpert testimony is admissible if it merely supports an inference or conclusion that the defendant did or did not have the requisite mens rea, so long as the expert does not draw the ultimate inference or conclusion for the jury."

8

*United States v. Watson*, 260 F.3d 301, 309 (3d Cir. 2001) (internal quotation marks omitted). However, "[i]t is settled law that an expert may testify about common behavior patterns in a profession or subculture." *United States v. Price*, 458 F.3d 202, 212 (3d Cir. 2006). In *Price*, we rejected the defendant's argument that Rule 704(b) barred an expert's testimony that "[d]rug sellers . . . almost always have a gun at hand or readily available" because the Government submitted the testimony to prove the defendant's mental state. *Id.* at 205. The testimony was "no more and no less than a description, in general and factual terms, [of] the common practices of drug dealers." *Id.* at 212 (internal quotation marks omitted).

In the present case, the expert witness testified that the facts and circumstances surrounding Farrish's behavior were "indicative" of someone who had the intent to deliver drugs. Similar to that in *Price*, this expert testimony merely described the common practices of drug dealers and did not draw the ultimate inference or conclusion for the jury. Accordingly, we find that the District Court did not abuse its discretion by allowing this expert testimony against Farrish.

C.

Farrish next argues the District Court inappropriately denied his motion to suppress the evidence recovered from the trunk of his car following his arrest because the police acted unlawfully in seizing him when they first approached his vehicle. Farrish and the Government presented conflicting evidence on whether the police blocked his

9

vehicle in such a way as to impede his ability to leave.  Farrish also argues he was not violating the law because he had only stopped temporarily, and had not parked, underneath the "no parking" sign.

We find these disputes immaterial.  Police officers may approach and question individuals under less than reasonable suspicion without violating the Fourth Amendment. *Florida v. Royer*, 460 U.S. 491, 497 (1983).  Further, a police officer who believes a traffic violation has occurred may lawfully stop the car committing the violation whether or not the officer was ultimately correct.  *See United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004).  In this case, Farrish's potential parking violation occurred in a high-crime area and could have made it difficult for emergency vehicles to navigate the intersection.  Detective Fallert initially planned to ask Farrish to move the car and only arrested Farrish after he behaved suspiciously, by indicating a possible attempt to destroy contraband, and admitted he had swallowed marijuana.  Because Detective Fallert had knowledge sufficient to warrant the conclusion that Farrish had committed a criminal offense, we find nothing wrong with Farrish's arrest.  *See United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002).

Farrish argues that even if his arrest was lawful, the police still violated his Fourth Amendment rights in conducting the inventory search of his vehicle's trunk, which he contends was a "fishing expedition" for evidence.  However, the police have the right to take a vehicle into custody without a warrant under certain circumstances, such as when a

10

vehicle "imped[es] traffic or threaten[s] public safety and convenience." *South Dakota v. Opperman*, 428 U.S. 364, 367, 369 (1976). Once the police have done so, they are permitted to inventory the car's contents, so long as they conduct the inventory search in a reasonable manner and subject to routine procedures. *Id.* at 369; *United States v. Frank*, 864 F.2d 992, 1001 (3d Cir. 1988). Also, "[t]he mere fact that an inventory search may also have had an investigatory purpose does not . . . invalidate it." *Frank*, 864 F.2d at 1001.

Farrish's parked car could have prevented emergency vehicles from navigating the intersection, and it is clear the police had a right to impound it. Also, there is no evidence indicating the police conducted the inventory of Farrish's vehicle in an unreasonable fashion or for any other improper purpose. Accordingly, we find the District Court did not err when it denied Farrish's motion to suppress the evidence found after his arrest and during the valid inventory search of his car.

## D.

Finally, Farrish argues that the District Court committed procedural error in sentencing because it believed it could not depart from the Guidelines to grant a downward variance based on the sentencing disparity between crack and powder cocaine. Under *Gall v. United States*, we "review the sentence under an abuse-of-discretion standard. [We] must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines

11

range, treating the Guidelines as mandatory, [or] failing to consider the § 3553(a) factors . . . ." 128 S. Ct. 586, 597 (2007).

Here, the District Court committed procedural error by failing to recognize its authority to grant a downward sentencing variance, effectively treating the Guidelines as mandatory. *See United States v. Gunter*, 462 F.3d 237, 239 (3d Cir. 2006). We have held that a district court "errs when it believes that it has no discretion to consider the crack/powder cocaine differential incorporated in the Guidelines." *Id.* at 249. At the sentencing hearing, Farrish's counsel argued for a downward variance under *Gunter* due to the crack/powder sentencing disparity. The District Court responded that, despite its disagreement with this disparity and its acknowledgment that "[i]t's unfair," the disparity is "a decision made by Congress, and it's a decision that the courts have upheld. I am obliged to uphold whatever decisions are made by higher courts." The District Court also stated that the request to consider this disparity presented "an invitation to disregard the very settled law that I am obliged to follow." The District Court therefore abused its discretion by not considering a sentencing variance based on the crack/powder cocaine disparity.

After Farrish's sentencing hearing, the Supreme Court approved our holding in *Gunter* that a District Court errs in sentencing a criminal defendant when it believes it cannot depart from the Guidelines on the basis of the crack/powder cocaine disparity. *See Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007) ("[T]he cocaine Guidelines, like

12

all other Guidelines, are advisory only, and . . . the Court of Appeals [for the Fourth Circuit] erred in holding the crack/powder disparity effectively mandatory."). Additionally, at the time Farrish filed his brief, the U.S. Sentencing Commission had not yet adopted Amendment 706, which modified the applicable Guidelines ranges to reduce the disparity between crack and powder cocaine offenses, specifically decreasing the Guidelines base offense levels for crack cocaine sentences by two levels. U.S. Sentencing Guidelines Manual § 2D1.1. Because the District Court sentenced Farrish believing it did not have the power to consider the crack/powder cocaine disparity as described in *Gunter*, and subsequently recognized by the Supreme Court in *Kimbrough*, we will remand to allow the District Court to take *Kimbrough* and Amendment 706 into consideration and to provide clearer language for whatever sentence the District Court imposes on remand. Accordingly, we will vacate Farrish's sentence and remand this case for resentencing in accordance with this opinion.

IV.

For the foregoing reasons, we will affirm Farrish's conviction, and we will vacate Farrish's sentence imposed by the District Court and remand for resentencing in light of *Kimbrough* and Amendment 706.

13