NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1536
_____

UNITED STATES OF AMERICA

v.

KELVIN GANDY,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2:08-CR-00186-004)
District Judge: Honorable Legrome D. Davis
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 27, 2012

Before:   McKEE, *Chief Judge*, JORDAN AND VANASKIE, *Circuit Judges*

(Filed: January 14, 2013)
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

Kelvin Gandy was convicted by a jury of one count of conspiracy to distribute five

kilograms or more of cocaine, in violation of 21 U.S.C. § 846.  Gandy appeals, arguing

that the evidence was insufficient to support the jury's finding that he participated in a

single cocaine distribution conspiracy as charged in the indictment.  Specifically, Gandy

argues that the evidence proved multiple conspiracies, rather than the single conspiracy charged, and also that he was merely a buyer, not a participant, in the conspiracy. We reject both arguments and will affirm the District Court's judgment.

I.

We write primarily for the parties, who are familiar with the facts and procedural history of this case. Accordingly, we set forth only those facts necessary to our analysis.

Following a lengthy under-cover investigation by the Pennsylvania State Police involving electronic and physical surveillance, informants, and execution of search warrants, Gandy and co-conspirators Burnie Majeed, Troy Cauthorn, and Jamille Barksdale were indicted in a seven-count indictment charging, *inter alia*, that the defendants conspired to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), and 21 U.S.C. § 846. Majeed, Cauthorn, and Barksdale entered guilty pleas; Gandy proceeded to trial. Majeed and Cauthorn testified for the Government at Gandy's trial.

Majeed and Cauthorn were the leaders of, and partners in, a drug-trafficking operation, the purpose of which was to distribute wholesale amounts of cocaine in Southeastern Pennsylvania. Majeed and Cauthorn became partners in 2005. The men shared common suppliers and engaged in substantial sales of wholesale quantities of cocaine to customers and distributors, including Gandy.

Gandy first began purchasing cocaine from Majeed in the 1990s and continued to do so through 2006. Gandy was designated as one of Majeed's distributors and eventually became part of the "inner circle" of the Majeed-Cauthorn organization. (S.A.

2

175-76.)  The three men regularly discussed prevailing prices for cocaine, security measures to evade police detection, and individuals who stole money or drugs from other dealers in the organization.  At trial, Cauthorn explained that Gandy was included in these conversations because "he basically was with us, so he had to be aware of the situation just as well as me . . . ."  (S.A. 171.)  The men communicated in code or through gestures and regularly replaced their cellular phones and phone numbers in order to evade detection.  Gandy also accompanied Majeed on drug sales on at least two occasions.

Majeed was Gandy's primary supplier, selling Gandy four and one-half or nine-ounce parcels of cocaine, two to three times per month.  Majeed sold cocaine on credit to trusted customers with whom he had an established relationship, including Gandy.  Pursuant to this arrangement, Majeed provided Gandy with cocaine, and Gandy repaid Majeed as he earned money from his own sales.  Cauthorn testified that he observed Majeed and Gandy conduct $10,000 cocaine transactions on five to ten occasions.

When Majeed's supply of cocaine was low, Cauthorn provided Gandy the desired amount of cocaine.  From 2005 to 2006, Cauthorn sold Gandy between nine ounces and half a kilogram of cocaine on approximately five occasions.  On one occasion, Cauthorn supplied Gandy a kilogram of cocaine.  At least one of these transactions was conducted without Majeed's knowledge.  Like Majeed, Cauthorn sold to Gandy on credit.

Gandy also facilitated cocaine purchases and sales by Barksdale, another distributor to whom Majeed regularly sold two or three kilograms of cocaine per month and who often served as a conduit between Majeed and other dealers.  For example, in January 2006, while Barksdale was recovering from a gunshot wound at a Pennsylvania

3

hospital, Gandy delivered cocaine on Barksdale's behalf to another dealer. On another occasion, Gandy drove Barksdale to a sale and loaned him money to purchase cocaine.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## A.

Count One of the indictment charged:

> From at least in or about January 2005, through in or about December 2006, in Philadelphia and the city of Chester, in the Eastern District of Pennsylvania, and elsewhere, defendants BURNIE MAJEED, TROY CAUTHORN, JAMILLE BARKSDALE, and KELVIN GANDY conspired and agreed, together with Edward Kaplan and Donald Johnson, charged elsewhere, and with others known and unknown to the grand jury, to knowingly and intentionally distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A).

(S.A. 384.)

Gandy first argues that the evidence adduced at trial proved multiple conspiracies, rather than the single conspiracy charged in the indictment. Specifically, Gandy claims that the evidence failed to show the existence of a single group whose purpose guided the actions of all participants. Rather, argues Gandy, the evidence proved the existence of only limited partnerships and, as to Majeed and Gandy specifically, a buyer-seller relationship insufficient to support a finding of a single conspiracy.

4

"To make out a conspiracy charge, the Government must show: (1) a unity of purpose between the alleged conspirators; (2) an intent to achieve a common goal; and (3) an agreement to work together toward that goal." *United States v. Pressler*, 256 F.3d 144, 147 (3d Cir. 2001). At trial, the District Court instructed the jury that whether there existed a single or multiple conspiracies "is a question of fact for you to decide." (S.A. 469.) The District Court further charged that "[i]f the Government's proof does not establish that [Gandy] was a member of [the] conspiracy [charged], then you may not find him guilty even if, for example, the evidence showed he was a member of a different conspiracy." (S.A. 469.) The jury found beyond a reasonable doubt that the Government proved the single conspiracy charged and that Gandy was a participant in it.

"We apply a particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence, [as] '[i]t is not for us to weigh the evidence or to determine the credibility of the witnesses.'" *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (quoting *United States. v. Voigt*, 89 F.3d 1050, 1080 (3d Cir. 1996)). We must affirm a jury's verdict where "there is substantial evidence that, when viewed in the light most favorable to the government, would allow a rational trier of fact to convict."[1] *United States v. Lee*, 612 F.3d 170, 178 (3d Cir. 2010) (quoting

---

[1] It is unclear whether Gandy's sufficiency of the evidence argument has been preserved for appellate review. "A defendant must move for a judgment of acquittal at the conclusion of the evidence to properly preserve for appeal issues regarding the sufficiency of the evidence." *United States v. Wolfe*, 245 F.3d 257, 261 (3d Cir. 2001). Where a defendant fails to do so, we review the sufficiency of the evidence under a plain error, rather than substantial evidence, standard. *See id.*

The parties' appendices contain only excerpts from the sealed trial transcript and do not reflect those portions of the trial during which a motion for judgment of acquittal

*United States v. Bornman*, 559 F.3d 150, 152 (3d Cir. 2009)). An appellant alleging

insufficient evidence to support the verdict carries a "very heavy burden." *See United*

*States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990) (internal quotation marks and

citation omitted).

Gandy fails to satisfy his "very heavy burden." *Id.* First, Gandy fails to

demonstrate that there was insufficient evidence to support the jury's finding that a single

conspiracy existed.

We use a three-step test to determine whether a single conspiracy, rather than

multiple conspiracies, existed:

> First, we examine whether there was a common goal among
> the conspirators. Second, we look at the nature of the scheme
> to determine whether the agreement contemplated bringing to
> pass a continuous result that will not continue without the
> continuous cooperation of the conspirators. Third, we
> examine the extent to which the participants overlap in the
> various dealings.

*United States v. Kelly*, 892 F.2d 255, 259 (3d Cir. 1989) (citing *United States v.*

*DeVarona*, 872 F.2d 114, 118-19 (5th Cir. 1989)).

In determining whether defendants had a common goal, "we look to the

underlying purpose of the alleged criminal activity." *United States v. Rigas*, 605 F.3d

194, 213 (3d Cir. 2010) (citing *United States v. Greenidge*, 495 F.3d 85, 93 (3d Cir.

2007); *Kelly*, 892 F.2d at 259). The evidence overwhelmingly establishes that Gandy,

---

would have been made, if at all. Neither party addresses the issue of preservation in its
brief. However, as discussed below, Gandy's claim fails even under the more stringent
"substantial evidence" standard, and thus his challenge to the sufficiency of the evidence
would similarly fail under the less demanding plain error standard. *See United States v.*
*Knox*, 32 F.3d 733, 752-53 (3d Cir. 1994).

6

Majeed, Cauthorn, and Barksdale continuously bought and sold cocaine, regularly coded drug-trafficking conversations and took other steps to evade police detection, and discussed their joint cocaine-trafficking business on a recurring basis throughout the charged period. Thus, a jury could rationally conclude that the accused co-conspirators shared the common goal of distributing five kilograms or more of cocaine.

Second, "'[a]s to whether the 'nature of the scheme' indicates a single conspiracy, we look to whether there was evidence that the activities of one group . . . were necessary or advantageous to another aspect of the scheme or to the overall success of the venture.'" *Greenidge*, 495 F.3d at 93 (quoting *Kelly*, 892 F.2d at 259) (internal quotation marks omitted). Here, "the agreement contemplated"—uninterrupted distribution of wholesale quantities of cocaine in Philadelphia and Chester throughout 2005 and 2006— "would not [have] continue[d] without the continuous cooperation of the conspirators." *Kelly*, 892 F.2d at 259. The evidence showed that Majeed and Cauthorn partnered in 2005 to ensure that each had an adequate supply of cocaine for distribution, regularly purchasing large quantities from at least two common suppliers. The men further assisted one another by providing cocaine when one was short and the other had an adequate or surplus supply. The evidence further established that Gandy served as a distributor, selling cocaine that he regularly received on credit from Majeed, and occasionally from Cauthorn when Majeed's supply was short. Gandy also facilitated cocaine sales for fellow distributor Barksdale. Furthermore, Gandy, Majeed, and Cauthorn regularly discussed issues critical to the successful distribution of cocaine, such as prevailing prices and "counter-surveillance" issues and techniques. (S.A. 84.) Without the cooperation of

7

Majeed, Cauthorn, and distributors, such as Gandy, the Majeed-Cauthorn organization could not have succeeded.

Finally, there was extensive overlap in the conspirators' dealings. Majeed and Cauthorn shared a common supplier and provided each other with cocaine when one could not obtain the requisite amount from his usual supplier. Both men sold cocaine on credit to distributors, including Gandy and Barksdale. On several occasions, Gandy delivered cocaine and arranged sales for Barksdale. Gandy, Majeed, and Cauthorn regularly discussed pricing and security concerns, communicating in code or gestures understood only by the others. As Cauthorn explained, the men were part of an "inner circle" from which "no information [left] . . . ." (S.A. 175.)

Viewing this evidence in the light most favorable to the Government, we conclude that it was sufficient to permit a reasonable jury to find that a single overarching conspiracy existed. In this regard, as we observed in *United States v. Smith*, 789 F.2d 196, 200 (3d Cir. 1986), even "a finding of a master conspiracy with sub-schemes does not constitute a finding of multiple, unrelated conspiracies . . . ."

## B.

Gandy also argues that even if the evidence supported a finding that there existed a single conspiracy, the evidence was not sufficient to show that he was a knowing participant in it. Gandy argues that he was a "small customer" who did not distribute cocaine on Majeed's behalf and thus he is not liable as a conspirator.

It is true that "a simple buyer-seller relationship, without any prior or contemporaneous understanding beyond the sales agreement itself, is insufficient to

8

establish that the buyer was a member of the seller's conspiracy." *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999). But we went on to note in *Gibbs* that "'even an occasional supplier (and by implication an occasional buyer for redistribution) can be shown to be a member of the conspiracy by evidence, direct or inferential, of knowledge that she or he was part of a larger operation.'" *Id.* at 198 (quoting *United States v. Price*, 13 F.3d 711, 728 (3d Cir. 1994)). Factors relevant to the determination of whether a defendant was a member of a conspiracy include: "the length of affiliation between the defendant and the conspiracy," the existence of "an established method of payment," "the extent to which transactions are standardized," "whether there is a demonstrated level of mutual trust," and whether the "transactions involved large amounts of drugs." *Id.* at 199.

Evidence of much more than a "simple buyer-seller relationship" was presented here. Multiple individuals, including Majeed and Cauthorn,[2] testified that two to three times per month during the charged period, Gandy purchased from Majeed four and one-half or nine-ounce parcels of cocaine. When Majeed could not supply the requisite cocaine, Gandy obtained it from Cauthorn. On one occasion, Gandy purchased from Cauthorn a kilogram of cocaine. Additionally, Gandy made pre-arranged purchases for fellow distributor Barksdale, to whom he also lent money to finance drug purchases.

---

[2] Emphasizing that Majeed and Cauthorn were known drug dealers who testified in exchange for favorable dispositions in their own criminal cases, Gandy asserts that their testimony cannot support the jury's verdict. However, "in a review following conviction, all issues of credibility within the province of the jury must be viewed in the light most favorable to the government." *Gonzalez*, 918 F.2d at 1132. Thus, we must view the testimony of Majeed and Cauthorn in the light most favorable to the government and treat such testimony as credible.

9

Gandy obtained the cocaine on credit, a payment arrangement that this Court has found to be relevant in establishing participation in a conspiracy because it may reflect mutual trust and "mutual stake" in the alleged conspiracy. *See Gibbs*, 190 F.3d at 199.

Although Gandy attempts to differentiate his involvement from that of fellow distributor Barksdale on the ground that Barksdale relayed messages to dealers on Majeed's behalf and sold greater quantities of cocaine, Gandy admits that he accompanied Majeed on drug deals on at least two occasions. Furthermore, Gandy's regular purchases of significant quantities of cocaine from Majeed and Cauthorn demonstrate that he was more than a mere buyer "without any prior or contemporaneous understanding beyond the sales agreement itself." *Gibbs*, 190 F.3d at 197.

Additional evidence of the "length of affiliation" between Gandy and the conspiracy and "demonstrated level of mutual trust" among the conspirators was presented in the form of taped conversations between Gandy, Majeed, Cauthorn, and others detailing the operations of the conspiracy. *Id.* at 199. During these conversations, the men communicated in code or gestures, further demonstrating Gandy's familiarity with the conspiracy and the mutual trust among the men. According to Cauthorn, Gandy was included in the conversations because, as part of the "inner circle," "he basically was with us, so he had to be aware of the situation . . . ." (S.A. 171, 175-76.)

Viewing this evidence in the light most favorable to the Government, we conclude that there was sufficient evidence to permit a reasonable jury to find that Gandy was not a one-time buyer, but rather a participant in the charged conspiracy to distribute cocaine.

III.

For the foregoing reasons, we will affirm the District Court's judgment.