

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-18-2008

# USA v. Throckmorton

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3823

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Throckmorton" (2008). *2008 Decisions.* Paper 1431.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1431

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

———

NO. 06-3823

———

UNITED STATES OF AMERICA

v.

THOMAS EDWARD THROCKMORTON
Appellant

———

On Appeal From the United States
District Court
For the Western District of Pennsylvania
(D.C. Crim. Action No. 05-cr-00219)
District Judge:  Hon. Terrence F. McVerry

———

Argued January 10, 2008

BEFORE:  FISHER, HARDIMAN and
STAPLETON, *Circuit Judges*

Opinion Filed: March 18, 2008

———

Robert L. Eberhardt (Argued)
Office of the United States Attorney
700 Grant Street - Suite 4000
Pittsburgh, PA  15219
  Attorney for Appellee

Paul D. Boas (Argued)
Law & Finance Building - 5th Floor
429 Fourth Avenue
Pittsburgh, PA  15219
  Attorney for Appellant

---

OPINION OF THE COURT

---

STAPLETON, Circuit Judge:

Thomas Throckmorton appeals his conviction for possession with intent to distribute one hundred kilograms or more of marijuana.  We will affirm.

**I.**

Because we write only for the parties who are familiar with the factual context and procedural history of the case, we set forth only those facts necessary to our analysis.

On June 17, 2005, Robert Gailey was apprehended at a mid-Missouri drug interdiction checkpoint while in possession of 233 pounds of marijuana.  After Gailey was assured that his brother George, who played a nominal role in the operation, would not be prosecuted, he admitted his involvement in an interstate marijuana trafficking operation and agreed to help authorities build a case against its ringleader, Thomas Throckmorton.

To this end, law enforcement officers fitted Gailey with a personal recording device and instructed him to deliver the marijuana to Throckmorton.  Gailey complied,

and after he arrived at Throckmorton's place of business, the pair engaged in a conversation that was highly incriminating – at one point in the discussion, Throckmorton even asked Gailey to return to Arizona and retrieve another 720 pounds of marijuana. This conversation was recorded in its entirety by the device that Gailey was wearing.

Based on the contents of that conversation and the fact that he had accepted delivery of 233 pounds of marijuana, Throckmorton was arrested and charged with trafficking a hundred or more kilograms of marijuana. Throckmorton elected to go to trial, primarily arguing that he was wholly innocent. Alternatively, he argued that Gailey had intended to retain at least thirteen pounds of the marijuana for his own personal use and distribution, which meant that Throckmorton had not trafficked one hundred or more kilograms of the substance. The jury found him guilty as charged. Subsequently, he was sentenced to eighty-seven months of incarceration and five years of supervised release. This appeal followed.[1]

## II.

Although we will affirm Throckmorton's conviction because we believe the errors that occurred during his trial were harmless, two rulings by the District Court merit additional discussion.

### A.

First, we are troubled by the District Court's decision to admit Trooper Edward

---

[1]We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291.

Walker's testimony regarding what the accounting records kept by drug dealers, called owe-sheets, generally look like.

A review of the transcript makes it clear that when Walker took the stand, he intended to testify that some of the documents seized during a search of Throckmorton's place of business were owe-sheets. The defense objected, arguing that because the government failed to furnish any summary of his testimony, as required by Federal Rule of Criminal Procedure 16(g), Walker could not be called as an expert, and further that as a lay witness, any information he offered on this topic amounted to impermissible opinion testimony. The District Court agreed, saying, "[Walker] is not going to be permitted to testify to his opinion, lay, expert, or otherwise, relative to the documentation that has been contested and whether that documentation constitutes [owe-sheets] and/or is otherwise reflective of possession with intent to deliver." (App. 760a.)

The government complied with the letter, but not the spirit, of this ruling by asking Walker to describe what owe-sheets generally "looked like." After the defense's objection to the question was overruled, Trooper Walker testified:

> "An [owe]-sheet is a piece of paper which contains usually [a] first name . . . and what is owed to them. They keep these sheets because drug dealers don't hand out receipts or bills or anything like that. They keep these sheets on them in order to keep track of who owes what . . ."

(App. 804a.) Beyond being a general description of an owe-sheet, it was also a fairly accurate description of the documents seized from Throckmorton's business, which were later published to the jury.

4

As the Advisory Committee's notes on Federal Rule of Evidence 701 state, "the distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field."  Within this context, Walker's testimony was not limited to facts discovered during this particular investigation; instead, he brought the wealth of his experience as a narcotics officer to bear as he opined on the general format of an owe-sheet, which means he testified as an expert.  *E.g.*, *United States v. Oriedo*, 498 F.3d 593, 602-603 (7th Cir. 2007); *United States v. Garcia*, 413 F.3d 201, 216 (2d Cir. 2005).  As a consequence, the District Court should not have permitted Walker to answer this question.

*B.*

We also believe that the District Court erred in refusing to let Throckmorton cross-examine Robert Gailey about the period of incarceration he would be facing had he not cooperated with authorities.

Although the District Court retains "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant," this power is not without boundaries.  *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986).  Instead, any such limitation is reviewed for abuse of discretion, which turns on "(1)

5

whether the limitation significantly limited the defendant's right to inquire into a witness's motivation for testifying; and (2) whether the constraints imposed fell within the reasonable limits that a district court has the authority to impose." *United States v. Mussare*, 405 F.3d 161, 169 (3d Cir. 2005).

In *United States v. Chandler*, a witness testified that he expected the government to move for a reduced sentence in exchange for his testimony, but the defendant was not permitted to inquire about how much time the witness would have been facing absent his cooperation. 326 F.3d 210, 222 (3d Cir. 2003). As the *Chandler* court explained, this amounted to a significant limitation on the defendant's right to examine a witness' motives for testifying because her "mere acknowledgment that she hoped that the government would move for a lesser sentence did not adequately enable a jury to evaluate her motive to cooperate." *Id.*

Throckmorton's case is nearly identical. Robert Gailey merely acknowledged that by testifying he believed he would be offered some leniency, but was never asked to provide the jury with any estimate of the punishment he would otherwise be facing. And, just as in *Chandler*, this deprived the jury of any frame of reference to evaluate his motive to cooperate. For this reason, we believe that when the District Court prevented any cross-examination on this topic, it significantly limited Throckmorton's right to inquire into Gailey's motivation for testifying. *See id*.

Consequently, the inquiry shifts to "whether the constraints fell within the

reasonable limits that the District Court has the authority to impose." *United States v. Harris*, 471 F.3d 507, 513 (3d Cir. 2006). This second step calls for a balancing test, which in this case involves weighing the risk of prejudice to Throckmorton against the risk of jury nullification which the District Court sought to minimize. The issue thus posed is relatively easy to resolve, as this Court has previously explained that any interest in preventing nullification "ha[s] to yield to [the defendant's] constitutional right to probe the possible biases, prejudices, or ulterior motives of the witnesses against [him]." *Chandler*, 326 F.3d at 223.

Because we are satisfied that the District Court imposed a significant limitation on Throckmorton's right to cross-examine Gailey, and are further satisfied that this constraint was not within the reasonable limits that a district court has the authority to impose, we conclude that the District Court abused its discretion when it barred Throckmorton from inquiring as to the period of incarceration that Robert Gailey would be facing absent his cooperation.[2]

---

[2]Throckmorton advances a number of additional claims that do not entitle him to relief. Specifically, Throckmorton argues that the District Court erred in refusing to instruct the jurors on the lesser included offense of intent to distribute an unspecified amount of marijuana; in refusing to provide an accomplice instruction pertaining to the testimony provided by Robert Gailey's brother, George; and in permitting the government to provide jurors with an unofficial transcript of the taped conversation between Throckmorton and Gailey. We have reviewed all of these claims and find them to be without merit. There was no evidence to support a conclusion that Throckmorton and Gailey had intended to split the marijuana in the truck; the District Court adequately instructed the jury on the evaluation of the credibility of witnesses in light of their self-interest; and the submission of the transcript as an aid to the jury under proper instruction

*C.*

However, in considering the impact of this error on the proceedings, as well as the District Court's erroneous decision to let Trooper Walker testify to the general appearance of an owe-sheet, we can say with confidence that both errors were harmless in the context of the record as a whole. The evidence was overwhelming: Throckmorton had accepted delivery of 233 pounds of marijuana, and while doing so, was caught on tape having an extensive discussion about the trafficking operation. Further, at trial, not only did Robert Gailey testify to Throckmorton's involvement, so did his brother George, who had seen evidence of the operation first-hand. Accordingly, we have no doubt that the jury's verdict would have remained the same even in the absence of these errors, and therefore conclude that they were harmless. *E.g.*, *United States v. Casoni*, 950 F.2d 893, 902 (3d Cir. 1991); *United States v. Korey*, 472 F.3d 89, 96 (3d Cir. 2007).

**III.**

For these reasons, the judgment of the District Court will be affirmed.

---

was clearly permissible.