**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-1168 & 16-2200
_____

UNITED STATES OF AMERICA

v.

ELAMIN BASHIR,
               Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 2-14-cr-00284-002 & 2-14-cr-00421-001)
District Judges: Hon. Petrese B. Tucker (No. 2-14-cr-00284-002) and
Hon. Stewart Dalzell (No. 2-14-cr-00421-001)
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 25, 2018
_____

Before: McKEE, SHWARTZ, and NYGAARD, <u>Circuit Judges</u>.

(Filed: June 15, 2018)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

SHWARTZ, Circuit Judge.

El Amin Bashir appeals his conviction and sentence for drug conspiracy, as well as his sentence for violating separately imposed conditions of supervised release. None of the four issues he raises from his drug conspiracy conviction and sentence, nor the two issues arising from his supervised release violation, has merit, and we will therefore affirm.

I

A

1

In April 2014, Moises Parra, a confidential informant for the Chandler, Arizona Police Department ("CPD"), contacted Michael Lewis, a drug trafficker with whom he had previously distributed marijuana, about a potential new drug partnership. Lewis asked Parra if he could sell cocaine in addition to marijuana, and Parra said he could.

Thereafter, Parra met with Lewis, Bashir, Omar Teagle, and an unindicted co-conspirator, Tony Davis, at the Renaissance Philadelphia Airport Hotel. During the meeting, Parra and Teagle discussed selling approximately fifty kilograms of cocaine and 1000-2000 pounds of marijuana on a weekly basis, and the co-conspirators agreed to travel to Phoenix, Arizona, to continue their discussions regarding the drug transactions.

Four days later, Parra met with Bashir, Lewis, Teagle, and Reginald Irby at the Hyatt Regency hotel in Phoenix. Parra then took them to a warehouse in Tempe, Arizona, where they discussed the price and quantity of the cocaine they wanted shipped to Philadelphia. During the meeting, Parra and Bashir discussed construction supplies

2

and agreed they could use their construction businesses to launder the drug proceeds. In addition, and as directed by law enforcement, Parra showed three sample kilograms of cocaine to the co-conspirators. Parra and Irby opened the packages of cocaine, and after Teagle, Bashir, and Irby discussed which of the three samples of cocaine they preferred, Parra and Bashir rewrapped the cocaine. Parra and the co-conspirators confirmed the transaction would involve twenty-five kilograms of cocaine. They then left the warehouse, and Bashir and Irby purchased prepaid cell phones, including one for Parra, to use to discuss the cocaine deal.

A few weeks later, Teagle and Irby flew to Phoenix and delivered Parra a $25,000 deposit for the cocaine. Parra thereafter returned to Philadelphia, where he met with Irby. When Irby showed Parra additional money for the cocaine, Irby was arrested, and over $200,000 was seized.

A grand jury sitting in the Eastern District of Pennsylvania returned an indictment charging Bashir with conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. Six days before the April 8, 2015 trial was set to begin, the Government filed an Information under 21 U.S.C. § 851 charging that Bashir had a prior felony drug conviction, which triggered a mandatory minimum sentence of twenty years' imprisonment upon conviction.

In a pretrial order, the District Court directed the Government to disclose exculpatory and impeachment information pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), three days before trial. On March 31, 2015, the Government disclosed, among other things: (1) three statements

3

attributed to Teagle; (2) a report of an August 8, 2014 proffer of Lewis; and (3) Parra's redacted criminal history and payment history, which the Government supplemented in emails to defense counsel the following week.

Following the presentation of evidence, the District Court instructed the jury on the conspiracy charge. In instructing the jury on the elements of conspiracy, the District Court explained the object of the conspiracy—possession with the intent to distribute controlled substances—and stated that in assessing Bashir's state of mind, "Your decision whether the defendant knew the material he possessed with the intent to distribute was a controlled substance again involves a decision about the defendant's state of mind." No. 16-1168 App. 831. Defense counsel objected to the instruction, which the Court overruled.

The jury convicted Bashir, finding specifically that the quantity of cocaine involved in the conspiracy and attributed to and/or reasonably foreseeable to Bashir was five kilograms or more. He filed a motion for a new trial, alleging the Government violated its Brady obligations by failing to disclose the grand jury testimony of Special Agent Gordon Patten until after trial, which the District Court denied. Bashir was sentenced to 240 months' imprisonment and ten years' supervised release.

B

After his sentencing, Bashir addressed a petition for violating conditions of supervised release that were imposed following a 2003 drug conviction in the Middle District of Florida. Bashir's supervision on the Florida case was transferred to the Eastern District of Pennsylvania.

4

The petition alleged, among other things, that Bashir violated the condition that he commit no other crimes.[1] Bashir admitted that the new drug conviction violated that condition of supervised release. The District Court then moved to sentencing and invited Bashir to address the Court. Bashir stated, "Two things I'd like to say and I'd like to present to the Court. You have in my presentence report it said that Florida notified the district that I was unemployed." No. 16-2200 App. 53. At that moment, however, the District Court asked, "So what is the Government's recommendation regarding the [sentence] – it seems to me it's pretty clear." No. 16-2200 App. 53. The Government asked for the statutory maximum sentence of twenty-four months' imprisonment, which was also the advisory Guideline minimum sentence, to be served consecutive to Bashir's 240-month sentence. After hearing from defense counsel, the District Court stated:

> [T]he thing that troubles me is that this is such a cognate offense to what Chief Judge Tucker dealt with. . . . I think under the circumstances and, obviously, subject to your powerful arguments, the Government's recommendation has a lot going for it. And now the two years is not an insubstantial time. I understand that. And, of course, the sanction that I impose, Mr. Bashir, is something you could appeal. . . . So in light of that, I'm going to impose a revocation sentence of 24 months consecutive to Chief Judge Tucker's sentence . . . . Look, this is serious business that brings us together and we do not in any way, shape, or form take this lightly. We take your liberty very seriously . . . but I think our hands are pretty much tied here and I think the Government's position has a lot of force behind it and so that's what I'm going to do.

No. 16-2200 App. 54-55.

---

[1] The petition included three additional violations: (1) making a false statement on a monthly supervision report; (2) traveling outside the district without permission; and (3) associating with a convicted felon. These violations were withdrawn.

Counsel for the Government then reminded the Court that Bashir had begun his allocution by stating he had "two things" to say to the Court and that he had addressed only one. In response, the Court asked Bashir if there was anything else he would like to say, and the following transpired:

> THE DEFENDANT: I would like to appeal.
>
> THE COURT: Okay, [defense counsel] will be happy to do that for you.
>
> THE DEFENDANT: Okay. On record, I was called to a construction auction so it was surprise of this surprise flash. This is what the Government – this is the Government's statement. Surprise means unknowing, not willing, unwilling, and I never seen these people again.
>
> THE COURT: Well, you certainly have a right to take an appeal.
>
> THE DEFENDANT: I'm just saying I want to make sure it's on the record, so when I appeal, it wasn't my intentions to be involved in something. It was a forced situation. I dealt with it up here, but I want to substantiate my appeal rights. I was employed the whole time. Two jobs. There's a misread in my PSI that said I was unemployed, I was having trouble getting employment. I presented to the Court tax records, anything they wanted, all my tax W-2 forms and anything else that they need to present to the courts. I had two jobs the whole time I was on supervised release. There's no way one district could say I didn't comply and another district said I complied so I got incarcerated. You got two different – I've got two different reports in one report. So I'd just like to make sure that record is established when I establish my appeal.
>
> THE COURT: Well, like I say, we take your liberty very seriously, but, at the same time, we take the Court's authority very seriously and that's why we've imposed the sanction that we have. But, of course, if you'd like to take an appeal, [defense counsel] knows how to do that.

No. 16-2200 App. 57-58. The hearing then concluded.

Bashir appeals both his drug conspiracy conviction and sentence, as well as his supervised release sentence.

6

## II[2]

Bashir makes four arguments concerning his conviction and sentence on the drug conspiracy charge. We will address each in turn.

### A

Bashir argues the District Court abused its discretion in ordering the disclosure of Brady and Giglio material three days before trial because it prevented him from conducting an adequate investigation into (1) statements made by Teagle, Lewis, and Irby, and (2) impeachment material concerning Parra. Bashir also argues that the timing of the disclosures violated his due process rights.

A "district court has general discretionary authority to order the pretrial disclosure of Brady material 'to ensure the effective administration of the criminal justice system.'" United States v. Starusko, 729 F.2d 256, 261 (3d Cir. 1984) (quoting United States v. Higgs, 713 F.2d 39, 44 n.6 (3d Cir. 1983)). We review the District Court's discovery order for abuse of discretion. Higgs, 713 F.2d at 45.

As to the Brady-related due process claim, we "conduct[] a de novo review of the District Court's conclusions of law, and a clearly erroneous review of findings of fact." United States v. Risha, 445 F.3d 298, 303 (3d Cir. 2006). Under Brady, a prosecutor is required to disclose evidence favorable to a defendant that is material to guilt or punishment. Risha, 445 F.3d at 303. The obligation to disclose such "Brady material" is

---

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

"not based on any general constitutional right to discovery in criminal cases, but rather on a defendant's due process right to a fair trial." Higgs, 713 F.2d at 42. "Because Brady rests on the requirements of due process, our focus [is] on when disclosure is necessary to insure [the defendant] a fair trial." Id. at 43. "To constitute a Brady violation, the nondisclosure must do more than impede the defendant's ability to prepare for trial; it must adversely affect the court's ability to reach a just conclusion, to the prejudice of the defendant." Starusko, 729 F.2d at 262. "No denial of due process occurs if Brady material is disclosed to [the defendant] in time for its effective use at trial." Higgs, 713 F.2d at 44.

Under Giglio, the prosecution must disclose "information that [the defendant] could use on cross-examination to challenge the credibility of government witnesses," and a defendant's "right to a fair trial will be fully protected if disclosure [of such material] is made the day that the witness testifies," because "[d]isclosure at that time will fully allow [the defendant] to effectively use that information to challenge the veracity of the government's witnesses." Higgs, 713 F.2d at 44. Thus, a defendant's "due process rights to a fair trial would be satisfied . . . as long as disclosure is made the day that the government witnesses are scheduled to testify in court." Id.

In short, whether a defendant's due process rights are violated, or the District Court's disclosure deadline constitutes an abuse of discretion, depends on whether the information is material and has been disclosed in time for the defendant to effectively use it. As a result, we will simultaneously examine Bashir's abuse of discretion and due process arguments.

8

Bashir first argues that he did not have sufficient time to investigate statements attributed to Teagle and Lewis contained in investigative reports. The Government informed Bashir that on separate occasions in July 2014 and January 2015, Teagle stated that "Bashir told Teagle that he didn't feel the situation, and he wanted out," after the Renaissance Hotel meeting, and that "Bashir didn't know why Teagle was meeting Davis at the hotel." No. 16-1168 Appellant's Sealed App. 37.[3] The Government also disclosed a report of a proffer with Lewis in which Lewis stated that during the Arizona warehouse meeting, "Bashir told Teagle that he wasn't down with the situation anymore." No. 16-1168 Appellant's Sealed App. 72. The Government also disclosed a report reflecting that Lewis said "he heard Bashir tell Teagle that he was only there to watch his (Teagle's) back." No. 16-1168 Government's Sealed Supp. App. 7; Government's Br. at 23.

Bashir argues he was "unable to fully investigate" Teagle's statements because "[w]ithout the full reports containing the exculpatory statements, . . . Bashir had no ability to interview the author of the reports, investigate the circumstances under which the exculpatory statements were made, or understand the context of those statements to establish their veracity in light of the government's allegations of fabrication," and that he "did not have any time to investigate Michael Lewis's proffer statement." Appellant's

---

[3]The parties have discussed in their publicly filed briefs a number of items that are supported by materials in the sealed materials and we do the same. To the extent we quote from sealed materials, the order sealing the materials is lifted only as to the quoted material we set forth herein.

No. 16-1168 Br. 34-35. None of these complaints has merit. First, the Government was not required to disclose the full reports. Second, portions of the reports contained statements attributed to Teagle and Lewis, who are individuals known to Bashir, and Bashir thus could have taken steps to inquire of them and explore their perceptions of whether Bashir intended to participate in the conspiracy. The authors of the reports would not have personal knowledge of this subject and thus, the ability to interview such persons is irrelevant. Third, Bashir did not request any additional time to investigate the statements, despite filing numerous other motions in the week leading up to trial. Finally, Bashir used the material in his opening statement, telling the jury that "the evidence will show that [Bashir] also told one of those people that were there in the warehouse with him, . . . I don't want anything to do with this. This is bad. I want nothing to do with it." No. 16-1168 App. 119-20. Because the material was disclosed to Bashir "in time for its effective use at trial," Higgs, 713 F.2d at 44, the District Court's three-day deadline was both an appropriate exercise of discretion and did not violate due process.[4]

2

---

[4] Bashir also asserts that the District Court abused its discretion by refusing to hold a hearing on whether Irby made statements that allegedly exculpated Bashir, without reviewing the statements in camera before rendering a decision denying a hearing. Bashir appears to refer to a statement contained in an investigative report of Lewis's proffer session in which, "[a]ccording to Lewis, Irby and Teagle said they were going to get Bashir out of it. They would testify that he had nothing to do with it." No. 16-1168 Government's Sealed Supp. App. 6; Appellant's No. 16-1168 Br. at 5; Government's Br. at 32. Bashir had sufficient time to investigate this statement and to make effective use of it at trial, so we reject Bashir's argument that in camera review of the statement was needed.

10

Bashir next argues he did not have sufficient time to investigate impeachment material relating to Parra. Bashir argues that the timing of the disclosure of Parra's criminal history and payment history "prevented [him] from investigating Parra's background in a way that ensured that [he] had all the information necessary to cross-examine Parra fully and effectively," such as "the unique financial arrangement Parra had with the CPD." Appellant's No. 16-1168 Br. at 33-34.

The Government disclosed Parra's criminal and payment history before the Court-imposed three-day deadline, and Bashir was able to effectively use the information. First, in his opening statement, Bashir previewed for the jury that Parra was a "paid informant" and detailed the amount of money he received, his criminal history, and his relationship with the CPD. No. 16-1168 App. 119-22. Second, Bashir used the material to vigorously cross-examine Parra and a CPD detective about, among other topics, Parra's financial relationship with the CPD, the criminal charges against Parra that were dropped on account of his assistance to the CPD, and Parra's drunk driving arrest while cooperating with the CPD. Thus, Bashir's effective use of this impeachment material demonstrates that the District Court's discovery order did not constitute an abuse of discretion and did not violate due process.

Bashir's argument concerning the delayed disclosure of Parra's bench warrant history does not provide him a basis for relief. Although this information was not elicited until trial, Bashir impeached Parra with information about his criminal history and financial relationship with the CPD, and used Parra's bench warrant history in his closing argument, reminding the jury that Parra "had all of his charges dismissed, even though he

11

was a fugitive for three years." No. 16-1168 App. 770. Because Bashir was able to effectively use this information at trial, he suffered no due process violation from its delayed disclosure.

Bashir also argues that a statement he asserts Lewis made in the August 8, 2014 proffer session, that "Parra had [been] beaten out of $80,000 while he and Lewis worked together transporting marijuana in the St. Louis area," was "disclosed too late for Bashir to investigate to see if the allegation provided Parra with a motive to falsely implicate Lewis and the other defendants, including Bashir." Appellant's No. 16-1168 at Br. 35. Bashir does not, however, identify what more he would have investigated had he known this information sooner, and Bashir was fully able to probe Parra's motivations in cross-examination, so Bashir's argument fails.

Bashir further contends that he was "unable to investigate a viable racial profiling issue" because of the "delayed disclosure" of Lewis's statement that Parra had initiated contact with him—not the other way around—regarding potential new drug transactions. Appellant's No. 16-1168 Br. at 35-36. This assertion, however, is baseless because Parra and Lewis had a prior history of drug trafficking. Therefore, the timing of the disclosure does not provide basis for relief.

We also conclude Bashir suffered no prejudice from the Government's failure to provide Bashir with the grand jury testimony of Special Agent Patten until after trial. Before trial, the Government provided Bashir with reports written by Patten and Special Agent Dennis Dawson containing the same information in Patten's grand jury testimony about who initiated the contact between Parra and Lewis. Thus, the grand jury testimony

12

was cumulative. Moreover, Bashir probed this subject during Special Agent Dawson's testimony, eliciting the inconsistencies between his trial testimony and his report. Therefore, the Government's admitted failure to disclose the grand jury testimony of Special Agent Patten did not constitute a Brady violation. See United States v. Hill, 976 F.2d 132, 138 (3d Cir. 1992).

For these reasons, the District Court did not abuse its discretion in ordering the disclosure of Brady and Giglio material three days before trial, and the timing of the disclosure did not deny Bashir due process.

B

Next, Bashir argues the District Court improperly instructed the jury that Bashir actually possessed material that turned out to be a controlled substance when it stated, "Your decision whether the defendant knew the material he possessed with the intent to distribute was a controlled substance again involves a decision of the defendant's state of mind." No. 16-1168 App. 831. Bashir takes issue with the District Court's use of "the defendant," rather than "a defendant," and argues the Court thereby relieved the Government of its burden to prove the element of possession with intent to distribute beyond a reasonable doubt. We disagree.

"We exercise plenary review over challenges to the legal standards expressed in jury instructions." United States v. Korey, 472 F.3d 89, 93 (3d Cir. 2007). "[W]e consider the totality of the instructions and not a particular sentence or paragraph in isolation," United States v. Sussman, 709 F.3d 155, 175 (3d Cir. 2013) (citations and internal quotation marks omitted), to determine "whether, viewed in light of the evidence,

13

the charge as a whole fairly and adequately submits the issues in the case to the jury," United States v. Antico, 275 F.3d 245, 265 (3d Cir. 2001) (citations and internal quotation marks omitted), abrogated on other grounds by Skilling v. United States, 561 U.S. 358 (2010).

Jury instructions that relieve the Government of its burden to prove every element of the charged offense beyond a reasonable doubt violate a defendant's due process rights. Korey, 472 F.3d at 93. We therefore examine the court's instructions to determine if they created a mandatory presumption by foreclosing the jury's consideration of whether the facts presented established the elements of the charged offense. Id. (citations, internal quotations, and alterations omitted).

In this case, Bashir was charged with conspiracy to possess with intent to distribute five kilograms or more of cocaine. As a result, the Government was required to prove beyond a reasonable doubt that Bashir "shared a goal with his co-conspirators to further the purpose of distributing cocaine." Korey, 472 F.3d at 93.

The District Court's instructions were proper. First, the Court correctly recited the elements of a conspiracy and the elements of possession with the intent to distribute a controlled substance, making clear that the "focus of Count 1 is whether the Defendant and others agreed to possess with the intent to distribute a controlled substance, not whether any such possession with the intent to distribute actually occurred." No. 16-1168 App. 827. Second, the Court also instructed the jury "not to single out any one instruction alone as stating the law, but [to] consider the instructions as a whole in reaching [its] decision. No. 16-1168 App. 801; see Sussman, 709 F.3d at 175.

14

Third, in light of the evidence presented, which depicted a reverse sting operation in which the Government supplied the cocaine and displayed three kilograms as a sample, it is clear the jury was asked to decide whether Bashir agreed with others to possess with intent to distribute five kilograms or more of cocaine, and not whether Bashir's handling of the three kilogram cocaine sample rendered him guilty. Read in context, the District Court's reference to "the defendant" instead of "a defendant" when instructing the jury on Bashir's state of mind did not make the instructions erroneous or constitute a fact-finding by the Court that absolved the jury of its obligation to consider whether the Government met its burden to prove each element of the offense beyond a reasonable doubt.[5]

C

_____

[5] Indeed, the totality of the Court's instructions demonstrate that conspiracy was the critical focus of the jury's inquiry, not possession. For example, when instructing the jury on the elements of conspiracy, the Court stated:

> Evidence which shows that the defendant Bashir only knew about the conspiracy or kept bad company by associating with the members of the conspiracy or was only present when it was discussed and when a crime was committed, is not sufficient to prove that he was a member of the conspiracy, even if the Defendant Bashir approved of what was happening or did not object to it. Likewise, evidence showing that the Defendant Bashir may have done something that happened to help a conspiracy does not necessarily prove that he joined the conspiracy.

No. 16-1168 App. 822. Further, the Court instructed the jury that

> [m]erely being present at the scene of a crime or where a crime is being planned or merely knowing that a crime is being committed or is about to be committed is not sufficient to find that the Defendant Bashir committed those crimes," and that in order to convict, the jury must find that "the Defendant Bashir knowingly and deliberately associated himself with the crimes charged in some way as a participant, someone who wanted the crime to be committed, not as a mere spectator.

No. 16-1168 App. 822-23.

15

Bashir also challenges the application of the enhanced mandatory minimum sentence of twenty years' imprisonment pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851, arguing that it violated his Fifth and Sixth Amendment rights because the predicate prior conviction used to support the enhancement was not charged in the indictment or proved to a jury beyond a reasonable doubt. As Bashir acknowledges, however, Almendarez-Torres v. United States, 523 U.S. 224 (1998), and United States v. Blair, 734 F.3d 218, 227 (3d Cir. 2013), foreclose his argument.

Because Bashir has identified no error in his conviction and sentence, we will affirm.

## III[6]

Bashir makes two arguments challenging his sentence for violating his conditions of supervised release. For the reasons set forth below, we reject both arguments.

## A

Bashir asserts that he was denied an opportunity to address the District Court and that the error affected his substantial rights. Whether we exercise plenary review, United States v. Ward, 732 F.3d 175, 180 n.4 (3d Cir. 2013), or review for plain error, United States v. Adams, 252 F.3d 276, 284 (3d Cir. 2001), we conclude that Bashir was not denied his right to allocute.

---

[6] The District Court had jurisdiction over whether to revoke a sentence of supervised release pursuant to 18 U.S.C. § 3583(e). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

16

At revocation of supervised release proceedings, a defendant is entitled to "an opportunity to make a statement and present any information in mitigation." Fed. R. Crim. P. 32.1(b)(2)(E). Thus, Rule 32.1 gives a defendant the right to allocution at a supervised release sentencing. "The reason for allocution is not to permit the defendant to re-contest the factual issues of innocence and guilt. Rather, the purpose of allocution is to afford the defendant an opportunity to raise mitigating circumstances and to present his individualized situation to the sentencing court." Ward, 732 F.3d at 182.

At the District Court's invitation, Bashir presented "two things" to the Court. No. 16-2200 App. 53. First, he objected to a statement in the probation office's memorandum concerning his employment status. Although the District Court appeared to have interrupted Bashir at this point, the Court—after announcing the sentence it intended to impose—gave Bashir the opportunity to complete his allocution. At that time, Bashir again discussed his employment status, stated that he wanted to appeal the Court's sentence, and denied his involvement in the drug conspiracy that triggered the supervised release violation. After Bashir concluded his allocution, the District Court responded, "Well, like I say, we take your liberty very seriously, but, at the same time, we take the Court's authority very seriously and that's why we've imposed the sanction that we have." No. 16-2200 App. 58. Although it is preferable to allow a defendant to complete his allocution before announcing its intended sentence, the District Court gave Bashir the opportunity to allocute, considered what Bashir said, and made clear that it did not warrant modifying the sentence the Court imposed. Moreover, to the extent Bashir merely "re-contest[ed] the factual issues" resolved at his trial, the Court was under no

17

obligation to consider those statements in imposing the sentence. See Ward, 732 F.3d at 181-82. Therefore, Bashir was not denied the right to allocute.

B

Bashir also argues his revocation sentence was procedurally unreasonable because the District Court did not give meaningful consideration to his argument for a shorter or concurrent sentence and failed to consider both the factors in 18 U.S.C. § 3553(a) and his statement to the Court. Because Bashir failed to preserve his objection in the District Court, we review for plain error. United States v. Flores-Mejia, 759 F.3d 253, 259 (3d Cir. 2014) (en banc).[7]

"[F]or a sentence to be [procedurally] reasonable, the record must demonstrate that the sentencing court gave meaningful consideration to [the relevant § 3553(a) factors, as required by § 3583(e)] [but] need not . . . discuss a defendant's clearly nonmeritorious arguments, or otherwise discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing." United States v. Bungar, 478 F.3d 540, 543 (3d Cir. 2007) (citations and internal quotations omitted). A "[s]entence is imposed for violations of supervised release primarily to sanction the defendant's breach of trust[,] while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." Id. at

---

[7] To establish plain error, Bashir must demonstrate: (1) an error; (2) that is clear or obvious; and (3) that affects his substantial rights. Virgin Islands v. Mills, 821 F.3d 448, 456 (3d Cir. 2016). If all three prongs are satisfied, then our Court has discretion to remedy the error "only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 457 (alteration and internal quotation marks omitted).

544. Our review is "highly deferential," id. at 543, and the defendant bears the burden of demonstrating the sentence was procedurally unreasonable, United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009) (en banc).

Here, the District Court's revocation sentence was not procedurally unreasonable. Bashir contested the facts underlying his conviction, but given the guilty verdict, the Court was not required to discuss this nonmeritorious argument. See Bungar, 478 F.3d at 544. Moreover, Bashir argued for a reduced sentence because of his age. The District Court chose to give greater weight to his criminal history, stating that it was "trouble[d]" over the fact that Bashir's two convictions were "cognate offenses," i.e., that Bashir committed the drug offense underlying his violation of supervised release after having been convicted of another drug offense and serving a prison term. No. 16-2200 App. 54. Thus, the record shows the District Court considered the nature of Bashir's violation, his background and criminal history, and his breach of the Court's trust in imposing its sentence. See 18 U.S.C. § 3553(a)(1)-(4). Accordingly, we find no error in Bashir's revocation sentence.

## IV

For the foregoing reasons, we will affirm.